**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 11-07492 EAG |
| WALDO J. MARTINEZ RIVERA and GLENDA L. COLON LOPEZ, | CHAPTER 13 |
| DEBTORS. | FILED & ENTERED ON 09/10/2012 |

**OPINION AND ORDER**

Pending before the court is the chapter 13 trustee's objection to confirmation of a plan filed by joint debtors Waldo Martinez Rivera and Glenda Colon Lopez. (Docket No. 33.) The trustee's objection arises from the fact that debtors' plan proposes to separately classify and give preferential treatment to the unsecured portion of a claim for which Colon Lopez's mother is a codebtor. (Docket Nos. 2; 33.) The trustee argues that such treatment unfairly discriminates against the other unsecured creditors, which are to receive a significantly smaller dividend under the proposed plan, thus violating 11 U.S.C. § 1322(b)(1). For the reasons set forth below, the court overrules the trustee's objection and confirms the proposed plan.

**I. JURISDICTION**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.    FINDINGS OF FACT

The following facts are not in dispute.  Debtors filed a petition for relief under chapter 13 on August 31, 2011, and concurrently filed their schedules and a chapter 13 plan.  (Docket Nos. 1; 2.) The plan provides for debtors to pay the trustee $700 for 12 months, $788 for 48 months, and a $50,000 lump sum within 56 months, for a total of $96,224.  (Docket No. 2.)  From this, the trustee will pay his statutory commission, $2,900 in attorney's fees, $9,900.19 in pre-petition arrears to secured creditor Firstbank de Puerto Rico (Claims Register No. 7-1), $33,182.02 as payment in full of secured creditor Banco Bilbao Vizcaya Argentaria's ("BBVA") claim (Claims Register No. 10-1), and priority claims in the amounts of $191.44 filed by the Internal Revenue Service (Claims Register No. 8-2) and $3,327.57 filed by the Puerto Rico Department of Treasury (Claims Register No. 18-1). Id.  The plan also states that BBVA is to receive adequate protection payments prior to confirmation. Id.

Cooperativa de Ahorro y Crédito Villa-Coop Agustín Burgos Rivera ("Villa-Coop") filed a proof of claim in this case in the amount of  $36,777.16.  (Claims Register No. 6-1.)  The claim arises from a personal loan obtained by Martinez Rivera, which his mother-in-law co-signed as a guarantor.  Id.  The loan qualifies as a consumer debt under 11 U.S.C. § 101(8).  (Docket No. 46 at 5.)  The plan proposes to pay the secured portion of Villa-Coop's claim, in the amount of $11,315.21, by turning over debtors' shares to Villa-Coop.  (Docket No. 2; Claims Register No. 6-1.)  It further provides that the unsecured portion of Villa-Coop's claim, in the amount of $25,461.95, will be paid in full.  The remaining funds will be distributed pro rata to the other unsecured creditors, with an estimated distribution of 4.51% to them.  (Docket No. 2.)

On March 7, 2012, the trustee filed an unfavorable recommendation to the plan objecting to the proposed treatment of the unsecured portion of Villa-Coop's claim. (Docket No. 33.) A confirmation hearing was held on March 13, 2012, at which the court ordered the parties to brief the matter. (Docket No. 35.) Both parties have since submitted supporting memoranda as well as a joint statement of uncontested facts. (Docket Nos. 44; 45; 46.)

III.    LEGAL ANALYSIS

Section 1322(b)(1) of the Bankruptcy Code states that a chapter 13 plan may "designate a class or classes of unsecured claims, as provided in section 1122," provided that the debtor does not "discriminate unfairly" against any class so designated. 11 U.S.C. § 1322(b)(1). Courts have adopted a variety of tests to gauge whether a particular plan's treatment of a separated class of claims is fair. See Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 239 (B.A.P. 1st Cir. 2001) (adopting the approach of In re Colfer, 159 B.R. 602 (Bankr. D. Me. 1993), the court analyzed a variety of factors including "distributional priorities, fresh start, expressly permitted classifications, availability of subordination, extent of the estate, and amounts available for distribution under the plan").

Yet, Section 1322(b)(1) goes on to state "however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." 11 U.S.C. § 1322(b)(1). Since the Code was amended to include the "however clause" (as it is often referred to in caselaw), courts have been split as to whether–and under what conditions–the unfair discrimination test applies to cases where special treatment is given to a co-signed debt, with a minority of courts holding that the "however clause" exempts codebtor claims from this requirement. Compare In re Hill, 255 B.R. 579, 580 (Bankr. N.D. Cal. 2000), rev'd on other grounds, 268 B.R. 548 (B.A.P. 9th Cir. 2001) ("The statute clearly exempts codebtor debt

3

from the fairness requirement."), with In re McKown, 227 B.R. 487, 492 (Bankr. N.D. Ohio 1998) ("this Court joins the interpretation of numerous courts which have determined that the option of providing 'different' treatment to a co-signed, unsecured consumer obligation does not mean that a debtor has been dealt a wild card that automatically permits the debtor to discriminate unfairly against his or her general unsecured creditors when doing so.").

In this case, the trustee argues that the court should deny confirmation of the proposed plan, arguing that the preferential treatment it affords the unsecured portion of Villa-Coop's claim unfairly discriminates against the other unsecured creditors. (Docket No. 43 at pp. 15-19.) Debtors counter that the unfair discrimination test does not apply in this case since the claim in question concerns codebtor consumer debt. (Docket No. 44 at pp. 3-15.) In the alternative, debtors maintain that even if codebtor consumer claims are not wholly exempt from the unfair discrimination test, the plan satisfies the test, since the obligation at issue was entered into for debtors' benefit rather than the codebtor's, the plan satisfies the chapter 7 liquidation test, and because debtors wish to maintain a continuing relationship with the codebtor post-bankruptcy. (Docket No. 44 at pp. 4-11, 14-15); see In re Janssen, 220 B.R. 639, 644 (Bankr. N.D. Iowa 1998) (finding debtor's desire to maintain a good relationship with the co-signer, her father, to be a reasonable basis for discrimination). With regard to the latter argument, the court allows that the facts of the case may indeed satisfy the standard set forth in Jansen. However, neither debtors nor the trustee has submitted any evidence to the court regarding the codebtor's financial status. (Docket Nos. 43; 44; 46.) As the court in Janssen took into consideration debtor's testimony regarding her father's financial status–and the detrimental effect paying the codebtor claims would have on him–in finding the plan to be reasonable, an evidentiary hearing would be necessary in this case to make such a finding under that

4

standard. Janssen, 220 B.R. at 643-46. Regardless, this issue need not be reached here, as the court agrees that the unfair discrimination test does not apply to codebtor claims where the obligation is entered into for debtors' benefit.

*Unfair Discrimination Under Section 1322(b)(1)*

While many courts have sought to clarify the meaning of Section 1322(b)(1) by strictly applying rules of statutory construction, see Hugh Meyer v. Renteria (In re Renteria), 470 B.R. 838, 842-43 (B.A.P. 9th Cir. 2012) (collecting cases), the provision's ambiguous wording makes such an attempt insufficient, on its own, to ultimately resolve the issue. Compare Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, www.ch13online.com, § 150.1, at ¶ [26] ("The Code could have said that all separate classifications of cosigned claims are permitted if Congress intended that the existence of a consignor justified all different treatments. Because the statute does not say that, it is fair to infer that some justification is required."), with Ramirez v. Bracher (In re Ramirez), 204 F.3d 595, 599 n.8 (5th Cir. Tex. 2000) ("If co-signed debts were subject to the unfair discrimination test, the amended version simply could have provided in relevant part that a bankruptcy plan may 'designate a class or classes of unsecured claims, including co-signed unsecured debt, . . . but may not discriminate unfairly against any class so designated.'").

More persuasive is the legislative history of the 1984 amendment that added the "however clause" to the provision. Prior to the amendment, courts generally prohibited debtors from separately classifying codebtor claims in chapter 13 plans, finding that the plans failed the unfair discrimination test. See In re Thompson, 191 B.R. 967, 969-70 (Bankr. S.D. Ga. 1996).

5

This led many debtors ultimately to choose liquidation under chapter 7. Id. The amendment reflects Congress' intent to remove this hurdle to reorganization by better taking into consideration the practical realities of codebtor claims:

> [a]lthough there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan.

S. Rep. No. 65, 98th Cong., 1st Sess., pp. 17-18 (1983). Even more, the legislative history indicates Congress' concern not just with the effect of a codebtor claim on the debtor, but also its effect on the codebtor who is not in bankruptcy. Indeed, Congress found that separate classification of codebtor claims may be "practically necessary" to avoid a "ripple effect," by which codebtors, unable to make the payments either, are also forced to declare bankruptcy. Id. Given that under Section 1301 creditors may pursue collection activities against a codebtor who is not in bankruptcy for the portion of their claim that is not being paid through the plan, 11 U.S.C. § 1301, the court finds that there is a strong pragmatic basis for exempting co-signed consumer debts–undertaken for debtor's benefit–from the unfair discrimination restrictions applicable to other types of debt. The court thus joins the minority of courts who have so held. See, e.g., In re Renteria, 456 B.R. 444, 449 (Bankr. E.D. Ca. 2011) ("this court is persuaded that Congress added the [h]owever [c]lause to § 1322(b)(1) specifically to carve out an exception to the 'unfair discrimination' test, an exception that only applies to co-debtor-consumer claims."); In re Monroe, 281 B.R. 398, 400 (Bankr. N.D. Ga. 2002) ("the language of § 1322(b)(1) creates an exception to the unfair discrimination test in cases involving a co-signed debt."). In light of the fact that it is uncontested in this case that the debt

6

in question qualifies as consumer debt and that the loan proceeds went to debtors rather than the co-signor, the court overrules the trustee's objection to confirmation.

*Requirements for Confirmation under 1325(a)*

With that being said, the distinction between the majority and minority position regarding Section 1322(b)(1) is less significant than it first appears, since–regardless of whether the unfair discrimination test applies to codebtor claims–a chapter 13 plan must still comply with the requirements for confirmation under Section 1325. These include, but are not limited to, the good faith test (§ 1325(a)(3)), the chapter 7 liquidation test (§ 1325(a)(4)), and the disposable income test (§ 1325(b)). See In re Hill, 261 B.R. 495, 497 (Bankr. N.D. Fla. 2001). The court now addresses each.

As to the chapter 7 liquidation test, it is uncontested that unsecured creditors would receive a pro-rata share of $1,436 if the case were a chapter 7. (Docket No. 46 at 3.) By comparison, under debtors' plan, which proposes to pay in full the unsecured portion of Villa-Coop's claim in the amount of $25,461.95 from the general unsecured pool of $30,077.40: $4,615.45 would still remain for pro-rata distribution among the other general unsecured creditors. Id. Thus, the plan satisfies the chapter 7 liquidation test. Regarding the disposable income test, since debtors do not propose to pay all unsecured claims in full, the plan must comply with Section 1325(b)(1)(B), which simply requires that all of debtors' projected disposable income be paid to "unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). This section does not address how this income is to be allocated. See In re Knight, 370 B.R. 429 (Bankr. N.D. Ga. 2007). As there is no dispute that under debtors' plan all of debtors' projected disposable income is being used to pay either the unsecured portion of Villa-Coop's claim or the other unsecured claims, the plan complies with this section.

7

Finally, with regard to the good faith requirement, the court takes into consideration that the trustee did not raise an objection on this ground in either his unfavorable recommendation or in his supporting brief.  (Docket Nos. 33; 43.)  Courts in this district determine good faith on a case-by-case basis, examining the totality of the circumstances.  See in re Cruz, 2010 Bankr. LEXIS 3517, at *11 (Bankr. D.P.R. Oct. 5, 2010).  Essentially, a court's inquiry focuses on whether the proposed plan was filed with "honesty of intention" rather that for purposes of debt avoidance through manipulation of the Code.  See In re Paley, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008).  In this case, considering the facts of the case, including the fact that the obligation to Villa-Coop was entered for debtors benefit rather than the codebtor's, debtors' presumed desire to maintain a relationship with Colon Lopez's mother, and the fact that the plan satisfies the liquidation test (meaning that the other unsecured creditors would receive a higher distribution under the plan than they would in a liquidation), the court finds that the proposed plan was filed in good faith.

## IV.     CONCLUSION

Having determined that the unfair discrimination test is inapplicable to debtors' proposal to give preferential treatment to the unsecured portion Villa-Coop's claim, and that the plan otherwise satisfies the requirements of Section 1325, the court overrules trustee's objection to confirmation and confirms debtors' proposed plan.  A separate confirmation order will be entered.

In San Juan, Puerto Rico, this 10th day of September, 2012.

Edward A. Godoy
U.S. Bankruptcy Judge

8